## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                          **CRIMINAL ACTION**

**VERSUS**                                            **NO.  15-61**

**LISA CRINEL, ET AL.**                               **SECTION: "E" (5)**

## ORDER AND REASONS

This is a criminal action stemming from an alleged scheme to commit healthcare fraud, and to pay and receive illegal healthcare kickbacks.  Four defendants have moved to dismiss the indictment.[1]  The questions presented are two-fold.  First, the Court must determine whether the entire indictment should be dismissed for alleged misstatements of law before the grand jury.  If not, the Court must determine whether certain overt acts should be dismissed under Federal Rule of Criminal Procedure Rule 12(b)(3)(B).  For the reasons that follow, the motion is DENIED in its entirety.

### BACKGROUND[2]

On March 12, 2015, a federal grand jury in the Eastern of District of Louisiana returned a twenty-six count indictment.   Count 1 charges Abide and seventeen co-defendants with an elaborate conspiracy to commit healthcare fraud.  Count 2 alleges a conspiracy involving eleven defendants to pay and receive illegal healthcare kickbacks. The allegations of Count 2 largely summarize and build upon the allegations in Count 1.

---

[1] Lisa Crinel and PCAH, Inc. a/k/a Priority Care at Home d/b/a Abide Home Care Services, Inc. ("Abide") filed the original motion.  R. Doc. 76.  Suprenia Washington, R. Doc. 242, and Shelton Barnes, R. Doc. 259, joined the motion.
[2] The indictment is summarized more fully in a previous Order and Reasons.  *See* R. Doc. 263.  Familiarity is assumed.

Counts 3 through 22 allege substantive acts of healthcare fraud related to six individual Medicare beneficiaries.

## DISCUSSION

The arguments for dismissal are predicated on alleged deficiencies in Count 2, which charges a conspiracy to violate the Medicare anti-kickback statute.[3]  The statute provides in relevant part as follows:

> (1) whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind—
>
> > (A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or . . . .
>
> (2) whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person—
>
> > (A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program . . . .
>
> shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.[4]

The statute also contains a safe-harbor provision which excepts from Paragraphs (1) and (2) "any amount paid by an employer to an employee (who has a bona fide employment relationship with such employer) for employment in the provision of covered items or services."[5]  Defendants argue Count 2 erroneously charges certain referral fees as illegal kickbacks,[6] when, according to the indictment, those fees were paid to Abide employees[7]

---

[3] 42 U.S.C. § 1320a-7b(b).
[4] 42 U.S.C. § 1320a-7b(b)(1)-(2).
[5] 42 U.S.C. § 1320a-7b(b)(3)(B).
[6] *See* R. Doc. 76-1, p. 3 (citing R. Doc. 1, ¶¶ 53, 56, 57, 58).
[7] *See id.* (citing R. Doc. 1, ¶49).

and therefore covered by the safe-harbor provision.  According to Defendants, this error demonstrates "the Government plainly misinformed the grand jury about [the safe-harbor provision] which . . . necessarily tainted the entire grand jury proceeding and resulted in a facially deficient indictment charging innocent conduct as crime."[8]

Because the Government's presentation to the grand jury was legally deficient, Defendants contend the entire indictment should be dismissed with prejudice. Alternatively, they argue the Court should strike from the indictment those overt acts which allege the payment of referral fees to Abide employees.  The Court addresses these arguments in turn.

## I.        Dismissal of Indictment with Prejudice for Grand Jury Misconduct

A federal court has supervisory power to safeguard the integrity of the grand jury process,[9] but the limits of that power are narrowly circumscribed.[10]  The supervisory power should be used "only in extraordinary situations."[11]  Where, as here, a defendant complains of grand jury errors prior to the conclusion of trial, "dismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations."[12]  Thus, in order to prevail, Defendants must demonstrate two elements: a violation and resulting prejudice.  As set forth more fully below, Defendants cannot establish either.

---

[8] *Id.* at p. 4

[9] *United States v. Strouse*, 286 F.3d 767, 771 (5th Cir. 2002).

[10] *See United States v. Williams*, 504 U.S. 36, 46 (1992) ("[T]he supervisory power can be used to dismiss an indictment because of misconduct before the grand jury, at least where that misconduct amounts to a violation of one of those few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions.") (internal quotation marks omitted).

[11] *United States v. Wellborn*, 840 F.2d 980, 985 (5th Cir. 1988).

[12] *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (quoting *United States v. Mechanik*, 475 U.S. 66, 78 (1986)).

The safe-harbor provision is an affirmative defense.[13]  It is firmly established that the Government need not explain an affirmative defense or present evidence on it to the grand jury.[14]  Thus, an instruction to the grand jury that ignores the potential applicability of an affirmative defense is not necessarily a misstatement of law.  This follows from the basic principle that an affirmative defense is not a *prima facie* element of the Government's case.[15]  Defendants' attempt to repurpose the safe harbor affirmative defense as an additional element of the Government's burden of proof fails as a matter of law.[16]  Defendants cite no authority for the proposition that the Government must avoid seeking charges that may later be rebutted by an affirmative defense, nor has this Court found any.[17]

Furthermore, assuming *arguendo* the Government misstated the applicable law, Defendants' argument still fails, because they have failed to demonstrate prejudice. There is no evidence the misstatement "substantially influenced the grand jury's decision to indict," nor is there "grave doubt" the misstatement substantially influenced the grand jury's decision.[18]  Even without the four overt acts of which Defendants complain, Count 2 still contains *sixteen* other overt acts in furtherance of the charged conspiracy.  Because only one overt act is needed to prove a conspiracy,[19] Defendants have not established doubt—much less grave doubt—that the misstatement substantially

---

[13] *See United States v. Robinson*, 505 F. App'x 385, 387 (5th Cir. 2013); *United States v. Job*, 387 F. App'x 445, 455 (5th Cir. 2010).  Defendants readily concede this point.  *See* R. Doc. 76-1, p.8.

[14] *See United States v. Morad*, No. 13-101, 2014 WL 68704, at *3 (E.D. La. Jan. 8, 2014) (collecting cases); *United States v. King*, No. CR–08–002–E–BLW, 2008 WL 4055816, at *4 (D. Idaho Aug. 29, 2008).

[15] *Cf. United States v. Basnett*, 735 F.3d 1255, 1257 (10th Cir. 2013).

[16] *Cf. Williams*, 504 U.S. at 51–52 ("[I]t is the grand jury's function not to enquire . . . upon what foundation [the charge may be] denied, *or otherwise to try the suspect's defenses*, but only to examine upon what foundation [the charge] is made by the prosecutor." (alterations in original) (internal quotation marks omitted).

[17] Thus, if the defendant does not raise a meritorious affirmative defense at trial, and the Government proves its case, the Government will prevail.

[18] *See supra* note 12.

[19] *See United States v. Coleman*, 609 F.3d 699, 704 (5th Cir. 2010).

4

influenced the grand jury's decision.[20]   Defendants' argument "that the Government's mistake of law is critical [because] the vast majority of the case against the Defendants is circumstantial and speculative" is but a thinly veiled challenge to the sufficiency of the evidence.[21]  Such pre-trial challenges are improper.[22]

## II.    Dismissal of Indictment as Facially Deficient

Having determined dismissal is inappropriate under its supervisory powers, the Court must now determine whether the indictment is facially deficient.  Rule 12(b)(3)(B) is the procedural mechanism for challenging a defect in the indictment prior to trial.  To be legally sufficient, an indictment need only (1) enumerate each element of the charged offense, (2) fairly inform the defendant of the charges filed against him, and (3) provide the defendant with a double jeopardy defense against future prosecution.[23]   For purposes of this analysis, the Court accepts the allegations in the indictment as true.[24]

Defendants argue the indictment is facially deficient because it fails to negate, or affirmatively concedes, the applicability of the safe-harbor provision.   Once again, Defendants ignore the signal importance of the safe-harbor provision as an affirmative defense.  "Where Congress has enacted an affirmative defense in the proviso of a statute, the 'settled rule in this jurisdiction [is] that an indictment or other pleading . . . need not negative the matter of an exception made by a proviso or other distinct clause . . . and

---

[20] Any argument that the error infecting the four challenged overt acts carried over to the sixteen other overt acts is tenuous at best.  The Court declines Defendants' request to scour the grand jury transcripts in search of evidence that supports this argument.  *See* R. Doc. 76-1, p. 19-20.  Moreover, for the reasons previously stated, Defendants have failed to make the threshold showing necessary for disclosure of grand jury transcripts.  *See* Fed. R. Crim. P. 6(e)(3)(E)(ii) (authorizing disclosure "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury.").

[21] R. Doc. 76-1, p. 5.

[22] *See Morad*, 2014 WL 68704, at *3; *Williams*, 504 U.S. at 54 ("A complaint about the quality or adequacy of the evidence can always be recast as a complaint that the prosecutor's presentation [to the grand jury] was 'incomplete' or 'misleading.'").

[23] *United States v. Gaytan*, 74 F.3d 545, 551 (5th Cir. 1996).

[24] *United States v. Hogue*, 132 F.3d 1087, 1089 (5th Cir. 1998).

that it is incumbent on one who relies on such an exception to set it up and establish it.'"[25]  In other words, "[i]t has never been thought that an indictment, in order to be sufficient, need anticipate affirmative defenses."[26]  For this reason, any challenge to the indictment based on the safe-harbor provision fails as a matter of law.[27]

Defendants attempt to avoid this well-established precedent by citing the rule—applicable in *civil* suits—that a complaint may be dismissed under Rule 12(b)(6) when an affirmative defense appears on the face of the complaint.[28]  Defendants cite no authority for applying this rule to an indictment in a *criminal* case, nor has this Court found any.  Thus, Defendants' argument fails at the outset.  But even if the Court was inclined to consider the merits, the argument would still fail, because the indictment does not on its face concede the applicability of the safe-harbor defense.

The safe-harbor provision provides an affirmative defense for "any amount paid by an employer to an employee (who has a bona fide employment relationship with such employer) for employment in the provision of covered items or services."[29]  The implementing regulations provide a similar safe harbor: "'remuneration' does not include any amount paid by an employer to an employee, who has a bona fide employment relationship with the employer, for employment in the furnishing of any

---

[25] *Dixon v. United States*, 548 U.S. 1, 13 (2006) (alterations in original) (quoting *McKelvey v. United States*, 260 U.S. 353, 357 (1922)); *accord United States v. McCann*, 465 F.2d 147, 162 (5th Cir. 1972).

[26] *United States v. Sisson*, 399 U.S. 267, 288 (1970); *see also Patterson v. New York*, 432 U.S. 197, 210 (1977) ("Proof of the nonexistence of all affirmative defenses has never been constitutionally required; and we perceive no reason to fashion such a rule in this case and apply it to the statutory defense at issue here.").

[27] At least one other district court agrees with this analysis.  *See United States v. Davis*, No. H–14–171S–12, 2014 WL 6679199, at *5 (S.D. Tex. Nov. 25, 2014) (finding that the safe-harbor defenses in the anti-kickback statute "are affirmative defenses and that the Government is not under an obligation to anticipate and rule out every affirmative defense in its indictment."); *see also United States v. Reece*, No. 12-146, 2013 WL 5234227, at *5-8 (W.D. La. Sept. 13, 2013) (denying motion to dismiss based on safe-harbor affirmative defense in money laundering statute).

[28] *See* R. Doc. 76-1, p. 15; *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006) ("Although dismissal under rule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint.").

[29] 42 U.S.C. § 1320a-7b(b)(3)(B).

item or service for which payment may be made in whole or in part under Medicare, Medicaid or other Federal health care programs."[30]   As the plain language of these provisions make clear, the safe-harbor affirmative defense has two elements: (1) the existence of a bona fide employment relationship, and (2) payment for items or services compensable under Medicare.[31]   The indictment in this case does not concede or conclusively establish either of the elements necessary to prevail on the safe-harbor affirmative defense.

A. *Bona Fide Employment Relationship*

Defendants' argument is predicated on an erroneous interpretation of Paragraph 49 of the indictment, which provides as follows:

> In addition to physicians, ABIDE, CRINEL, and JAKES paid employees of ABIDE, WILLIAMS, RNs, PAYTON and other LPNs, Aides , recruiters and marketers between approximately $150 and $500 for each referral of a Medicare beneficiary who ABIDE fraudulently qualified for home health services eventually billed by PAULA JONES and another biller on behalf of ABIDE.

Based solely on use of the word "employee," Defendants argue the Government has conceded payments were made to Abide's bona fide employees.  The Court disagrees.

Although Paragraph 49 uses the word "employee," it does not explicitly state that any of the individuals listed are "bona fide" employees—the term used in the statute.[32]

---

[30] 42 C.F.R. § 1991.952(f).   This regulation is "entitled to the same judicial enforcement accorded Congressional legislation."   *Nursing Home Consultants v. Quantum Health Servs. Inc.*, 926 F. Supp. 835, 844 (E.D. Ark. 1996) (quoting *West Allis Memorial Hosp., Inc. v. Bowen*, 852 F.2d 251, 255–56 n.4 (7th Cir. 1988)).

[31] *See United States v. Starks*, 157 F.3d 833, 839 (11th Cir. 1998); *United States v. Luis*, 966 F. Supp. 2d 1321, 1330 (S.D. Fla. 2013) ("For either safe-harbor provision to apply, the remuneration must have been made to the employee for furnishing or providing covered items or services or for items or services payable under Medicare.").

[32] *See United States v. Novak*, No. 13 CR 312, 2014 WL 2937062, at *2 (N.D. Ill. June 30, 2014) (denying motion to dismiss based on safe harbor provision in part because indictment did not explicitly allege defendants were "*bona fide* employees . . . which is the predicate for the safe harbor provision . . . .").

As the Fifth Circuit has recognized,[33] the safe-harbor provision adopts the definition of employee set forth in 26 U.S.C. § 3121(d)(2).[34]  That statute adopts the "usual common law rules applicable in determining the employer-employee relationship."[35]  Those rules call for the trier of fact to consider several non-exclusive factors, including the following:

> [1] the hiring party's right to control the manner and means by which the product is accomplished . . . [2] the skill required; [3] the source of the instrumentalities and tools; [4] the location of the work; [5] the duration of the relationship between the parties; [6] whether the hiring party has the right to assign additional projects to the hired party; [7] the extent of the hired party's discretion over when and how long to work; [8] the method of payment; [9] the hired party's role in hiring and paying assistants; [10] whether the work is part of the regular business of the hiring party; [11] whether the hiring party is in business; [12] the provision of employee benefits; and [13] the tax treatment of the hired party.[36]

The indictment falls well short of providing sufficient information on these factors.  Count 2 incorporates Paragraphs 1-30 in Count 1.[37]  Paragraph 29 alleges Payton was a "Licensed Practical Nurse (LPN) at Abide."  Paragraph 30 alleges Williams was "a patient recruiter at Abide."  Neither of these admissions conclusively establishes that Williams, Payton or anyone else listed in Paragraph 49 is a bona fide employee of Abide.  Rather, the existence *vel non* of a bona fide employment relationship is a question of fact.  Therefore, the motion to dismiss must be denied.[38]

---

[33] *See Job*, 387 F. App'x at 455.

[34] 42 C.F.R. § 1001.952(i).

[35] 26 U.S.C. § 3121(d)(2).

[36] *Job*, 387 F. App'x at 455 (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323–24 (1992)).

[37] R. Doc. 1, ¶40.

[38] *See United States v. Flores*, 404 F.3d 320, 324 (5th Cir. 2005) ("In this circuit, [t]he propriety of granting a motion to dismiss an indictment under [FED. R. CRIM. P.] 12 by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact.") (alterations in original) (internal quotation marks omitted).  The Fifth Circuit has recognized a narrow exception to this rule, allowing a court to make "preliminary findings of fact . . . so long as the court's findings . . . do not invade the province of the ultimate finder of fact."  *Id.* at 324 n.6.  A pre-trial finding of bona fide employee status would clearly invade the province of the jury.  *See Novak*, 2014 WL 2937062, at *3 ("The Court has no doubt that the bona fide employee issue will be a significant contested point at trial.  But that, not a pretrial motion, is the place to contest it.").

B. *Payment for Items or Services Compensable Under Medicare*

Even if there exists a bona fide employment relationship, the safe-harbor provision does not apply unless a payment is made to the employee "for employment in the provision of covered items or services."[39]  The parties disagree over the meaning of this element of the defense—an issue of first impression in the Fifth Circuit.  At one extreme, Defendants argue the safe-harbor provision creates a blanket exception for *all* Medicare referral fees paid by an employer to a bona fide employee.  At the other extreme, the Government argues the payment of Medicare referral fees *never* falls under the safe-harbor provision, even if made to a bona fide employee.  Neither of these interpretations is persuasive.

The Government's interpretation contravenes "the elementary canon of construction that a statute should be interpreted so as not to render one part inoperative."[40]   The anti-kickback statute criminalizes the payment or receipt of Medicare referral fees.  The safe-harbor provision expressly exempts certain payments of referral fees.  If this exemption does not apply to Medicare referral fees under some circumstances, what purpose does it serve?  In other words, if all Medicare referral fees were illegal, there would be no safe-harbor provision.[41]   Under the Government's strained interpretation, it is impossible to imagine any scenario in which a defendant could successfully invoke the safe-harbor defense.

---

[39] 42 U.S.C. § 1320a-7b(b)(3)(B).

[40] *Colautti v. Franklin*, 439 U.S. 379, 392 (1979); *see also FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("A court must . . . interpret the statute as a symmetrical and coherent regulatory scheme . . . and fit, if possible, all parts into an harmonious whole.") (internal citations and quotation marks omitted).

[41] At least one district court has recognized the fallacy in a narrow interpretation of the safe-harbor provision.  *See United States v. Halifax Hosp. Med. Ctr.*, No. 6:09–cv–1002–Orl–31TBS, 2013 WL 6196562, at *8 (M.D. Fla. Nov. 26, 2013).

The Government cites two federal appellate court decisions in support of its position. In *United States v. Starks*, the Eleventh Circuit found that, even if the defendant believed he was a bona fide employee, the safe-harbor provision did not apply, because the defendant "received payment . . . only for referrals and not for any legitimate service for which the [employer] received any Medicare reimbursement."[42] The Court made this finding, however, without engaging in any substantive analysis of the statute.[43]

In *United States v. Borrasi*, the Seventh Circuit undertook the in-depth analysis missing in *Starks* but, in this Court's opinion, focused on the wrong statutory provision.[44] Specifically, the court focused on one of the substantive provisions of the anti-kickback statute—42 U.S.C. § 1320a-7b(b)(1)—as opposed to the safe-harbor provision in 42 U.S.C. § 1320a-7b(b)(3)(B).[45] The Seventh Circuit held the substantive provision is violated "if part of [a] payment compensated past referrals or induced future referrals."[46] The Court then applied this interpretation to the safe-harbor defense, finding the defense did not apply, because "at least part" of the payments to the defendant were intended to induce future referrals.[47] In other words, the Seventh Circuit essentially held that if a particular payment violates a substantive provision of the anti-kickback statute, the safe-harbor provision does not apply. This reading allows the rule to swallow the exception.[48]

---

[42] 157 F.3d at 839. It is unclear whether any of the patients referred by the defendants in *Starks* were actually eligible to receive Medicare benefits.
[43] *See id.*
[44] *See* 639 F.3d 774, 780–82 (7th Cir. 2011)
[45] *See id.* at 781–82. The anti-kickback statute contains two substantive provisions: one prohibits the receipt of kickbacks, 42 U.S.C. § 1320a-7b(b)(1), and the other prohibits the payment of kickbacks, 42 U.S.C. § 1320a-7b(b)(2).
[46] *Id.* at 782.
[47] *See id.*
[48] *See Halifax Hosp. Med. Ctr.*, 2013 WL 6196562, at *8 (rejecting similar argument).

Whereas the Government's interpretation of the safe-harbor provision concedes too little, Defendants' interpretation is over-inclusive.   Defendants argue the legislative history of the anti-kickback statute demonstrates Congress intended to decriminalize *all* Medicare referral fees paid to a bona fide employee.[49]   Having reviewed that same history, the Court arrives at a different conclusion.

Since its enactment in 1972, the anti-kickback statute has been amended several times.[50]   Those amendments were motivated in part "by the concerns of 'health care providers that many relatively innocuous, or even beneficial, commercial arrangements are technically covered by the statute and are, therefore, subject to criminal prosecution' because 'the statute on its face [was] so broad.'"[51]   The amendments produced several safe harbors,[52] including the bona fide employee exception at issue today.   Congress enacted this exception because it assumed employers would exercise an appropriate degree of supervision over their employees,[53] thereby reducing the potential for abusing the Medicare program.[54]   Where employers fail to exercise this supervision, applying the safe-harbor provision would undermine Congressional intent.

---

[49] In support of this argument, Defendants repeatedly cite a 1989 proposed rule from the Department of Health and Human Services, which provides in pertinent part as follows: "This [safe-harbor] permits an employer to pay an employee in whatever manner he or she chooses for having that employee assist in the solicitation of Medicare or State health care program business." *See* R. Docs. 76-1, p. 7; 253, p. 3-4.

[50] *See State v. Harden*, 938 So. 2d 480, 487–90 (Fla. 2006) (detailing amendments to statute).

[51] *See id.* at 488 (quoting Medicare and Medicaid Programs; Fraud and Abuse OIG Anti–Kickback Provisions, 54 Fed. Reg. 3088, 3088 (Jan. 23, 1989)).

[52] *See generally* 42 U.S.C. 1320a-7b(b)(3); 42 C.F.R. § 1001.952.

[53] For example, Congress assumed employers would ensure employees only refer patients legitimately eligible to receive benefits.

[54] *See Harden*, 938 So. 2d at 489 ("The employee safe harbor presumes a reduced potential for program abuse because of the greater degree of control that employers are presumed to exercise over their employees."); Medicare and State Health Care Programs: Fraud and Abuse; OIG Anti–Kickback Provisions, 56 Fed. Reg. 35,952, 35,981 (July 29, 1991) ("We are confident that the employer-employee relationship is unlikely to be abusive, in part because the employer is generally fully liable for the actions of its employees and is therefore more motivated to supervise and control them."); Medicare and Medicaid Programs; Fraud and Abuse OIG Anti-kickback Provisions, 54 Fed. Reg. 3088, 3093 (Jan. 23, 1989) ("We believe that if individuals and entities desire to pay a salesperson on the basis of the amount of business they generate, then to be exempt from civil or criminal prosecution, they should make these

Accepting the allegations in the indictment as true,[55] it is clear Abide did not supervise its employees as Congress intended.  The referral fees Defendants have challenged are listed as overt acts committed in furtherance of the conspiracy charged in Count 2.[56]  Count 2 alleges a conspiracy to pay and receive kickbacks "in exchange for providing Medicare beneficiary information that was used to submit fraudulent claims to Medicare."[57]  Surely Congress did not intend to exempt from criminal prosecution referral fees paid in furtherance of a scheme to defraud Medicare solely because those fees were paid to employees.  This would allow Medicare providers to escape liability merely by hiring their co-conspirators.  Congress could not have intended to create such a perverse incentive.

Having rejected the interpretations proffered by both parties, the question remains as to the proper scope of the safe-harbor defense.  The starting point is the text of the statute, which exempts payments made to employees "for employment in the provision of covered items or services."[58]  If an employee refers a patient who is actually eligible for Medicare and receives medically necessary services, the employer may provide appropriate compensation in the form of a referral fee.[59]  If, on the other hand—and as alleged in the indictment—an employee receives a referral fee from its employer/co-conspirator as part of a scheme to provide benefits to individuals ineligible to receive them, the safe-harbor provision is not applicable.  The Court believes this

---

salespersons employees *where they can and should exert appropriate supervision for the individual's acts.*") (emphasis added).

[55] *See Hogue*, 132 F.3d at 1089 ("[A] motion to dismiss an indictment for failure to state an offense . . . requir[es] the court to take the allegations of the indictment as true . . . .").

[56] R. Doc. 1, ¶52.

[57] *Id.* at ¶43.

[58] 42 U.S.C. § 1320a-7b(b)(3)(B).

[59] Assuming, of course, the defendant raises (and proves up) this affirmative defense at trial.

interpretation best harmonizes all provisions of the anti-kickback statute and accords with Congressional intent.

## CONCLUSION

Defendants have failed to demonstrate dismissal of the indictment is appropriate under the Court's supervisory powers.[60]  Furthermore, dismissal is not warranted under Rule 12(b)(3)(B), because an indictment need not anticipate or negate an affirmative defense such as the safe-harbor defense.  Defendants bear the burden of proving the defense at trial.  To carry this burden, Defendants must establish the following: (1) the existence of a bona fide employment relationship, and (2) payments made to employees "for employment in the provision of covered items or services."[61]

**New Orleans, Louisiana, this 16th day of June, 2015.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[60] In support of dismissal, Defendants make passing reference to the "advice-of-counsel" defense.  *See* R. Docs. 76-1, p. 17; 253, p. 7-8.  Defendants did not adequately brief this argument.  Therefore, it will not be addressed in this Order.  Defendants may re-urge the argument (if necessary) in the form of a properly supported motion.
[61] 42 U.S.C. § 1320a-7b(b)(3)(B).